FARM CREDIT SERVICES OF NORTH CENTRAL WISCONSIN, A
CA, Plaintiff-Appellant,†

v.

David WYSOCKI, Defendant-Respondent.

Court of Appeals

*No. 99–1013. Submitted on briefs October 8, 1999.—Decided
May 18, 2000.*

## 2000 WI App 124

(Also reported in 614 N.W.2d 1.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jerry W. Slater* of *Kelley, Weber, Pietz & Slater, S.C.* of Wausau.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gary L. Dreier* of *First Law Group S.C.* of Stevens Point.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1.   ROGGENSACK, J.   Farm Credit Services of North Central Wisconsin, ACA (FCS) brought this

action against David Wysocki, a former employee. FCS seeks to enforce a covenant not to compete which is a provision of a 1983 employment contract that Wysocki entered into with Production Credit Association of Wausau (PCA of Wausau). FCS claims it is the same corporation as PCA of Wausau, operating under a new legal name which was selected subsequent to several mergers which occurred during 1986 and 1991. Wysocki contends that the covenant is unenforceable by FCS because it is not the same corporation as PCA of Wausau and even if it were, the restrictive covenant is void under the provisions of WIS. STAT. § 103.465 (1983–84).[1] We agree that even if we were to assume, *arguendo*, that FCS is the same corporation as PCA of Wausau, because the restrictive covenant's "specified territory," as that term is used in § 103.465, has been unilaterally enlarged by FCS, we conclude that the restrictive covenant is void. Therefore, we affirm the judgment of the circuit court dismissing this action against Wysocki.

## BACKGROUND

¶ 2.   Wausau Production Credit Association was formed in 1934 as an agricultural credit association pursuant to the terms of the Farm Credit Act. *See* 12 U.S.C. 2001–2279cc (1994 & Supp. 1999).[2] Wysocki

---

[1] All references to the Wisconsin Statutes are to the 1983–84 version unless otherwise noted.

[2] The Farm Credit Act was established to assist farmers by increasing the availability of "sound, adequate, and constructive credit. To accomplish this objective, Congress created a farmer-owned cooperative credit system . . . ." *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1547 (11th Cir. 1985). The production credit associations and the federal land banks form parts of an integrated system of farmer-owned banks and

was hired in 1980 and began work without a written contract of any type. The majority of his time was spent on credit-related transactions for farmers who were members of that association. By 1983, Wausau PCA had changed its name to Production Credit Association of Wausau. PCA of Wausau, which was chartered to serve a specified geographic area, then entered into a written contract with Wysocki as a "Related Services Coordinator/Loan Officer" to perform "all other duties customarily performed by one holding such position" and to provide "accounting, bookkeeping, or prepare tax returns for PCA membership." The contract also contained the following restrictive covenant:

> Post-employment Competition. In consideration of the special training and materials provided to Employee by PCA and the preparation of tax returns for persons engaged in agriculture and confidential information made available to Employee by PCA concerning the financial affairs of its members, including, in particular, information generated by the Agrifax program, it is agreed that the Employee's activities shall be restricted in accord with this paragraph. If the Employee ceases to be a PCA Employee, for any reason, the Employee shall not, for a period of one year immediately following the date of separation from PCA, directly or indirectly, engage in the business of tax preparation, tax consultation, bookkeeping, or accounting, or any other duties performed as a tax consultant for PCA with the persons(s) (sic) the Employee con-

associations which are individually chartered to serve designated geographic areas and particularized credit needs. *See* 12 U.S.C. §§ 2071, 2091. All institutions created under the Farm Credit Act are regulated by the Farm Credit Administration, an independent federal agency. *See* 12 U.S.C. § 2002(a).

sulted or serviced in performance of his/her consultant duties at any time during the one year immediately prior to the date of separation. Person(s) includes individuals, sole proprietorships, partnerships, and corporations.

¶ 3. In 1986, PCA of Wausau merged with Production Credit Association of Antigo and Production Credit Association of Neillsville, in accord with an agreement among the PCAs that PCA of Wausau would be the surviving entity.[3] Prior to that merger, P CA of Wausau had been authorized to serve five counties and part of a sixth: Lincoln, Marathon, Portage, Price, Wood and a portion of Taylor. After that merger and a subsequent name change in 1989, PCA of Wausau, then legally operating as PCA of North Central Wisconsin, was chartered to serve twelve counties: Clark, Forest, Langlade, Lincoln, Marathon, Oneida, Portage, Price, Taylor, Vilas, Waushara and Wood. [4] After its charter was amended to permit the geographic expansion of its service area, PCA of North Central Wisconsin did not enter into any additional written contracts with Wysocki, but Wysocki continued to provide services to it, as an employee.

---

[3] PCAs are permitted to merge subsequent to an agreement of their memberships and the approval of the Farm Credit Administration. Often they are permitted to combine their geographic areas of service when they merge, but the Farm Credit Administration sometimes refuses to allow charter amendments which permit this. *See Buckeye Prod. Credit Ass'n v. United States*, 792 F. Supp. 827, 832 (D.D.C. 1990).

[4] Initially after the 1986 merger, PCA of Wausau was authorized to serve fourteen counties and part of a fifteenth. However, in 1989, its service area was restricted to twelve counties, and has remained constant for those same twelve counties since 1989.

¶ 4. In December of 1990, in anticipation of its merger with the Federal Land Bank Association of North Central Wisconsin, PCA of North Central Wisconsin changed its name to Farm Credit Services of North Central Wisconsin, ACA, under which name it continues to do business. The territory that FCS continues to serve is the same twelve counties served since 1989. However, FCS's business involves more facets than it did prior to the merger.[5] Based on undisputed facts, FCS contends that because the mergers it participated in were statutory mergers where the merger documents chose it as the surviving entity, it is the same corporation as that which contracted with Wysocki; and therefore, it is entitled to enforce the restrictive covenant against him upon his resignation in 1998.

¶ 5. Wysocki, denying that the restrictive covenant is enforceable, moved for summary judgment of dismissal, which the circuit court granted. It concluded that FCS was not the same entity as PCA of Wausau and that even if it were, the restrictive covenant was not enforceable because the territory specified in 1983 had been enlarged unilaterally by the time of attempted enforcement in 1998.

---

[5] Initially, PCA of Wausau was limited by its charter and applicable federal law under which it was authorized to extend credit to farmers, which credit was secured by personal property. It had no authorization to make real estate loans. However, that authorization was given after the merger with the Federal Land Bank Association of North Central Wisconsin in 1991.

## DISCUSSION

**Standard of Review.**

¶ 6.   This court applies the same summary judgment methodology as that employed by the circuit court. *See* WIS. STAT. § 802.08 (1997–98); *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 ( Ct. App. 1994). We first examine the complaint to determine whether it states a claim, and then we review the answer, to determine whether it joins a material issue of fact or of law. *See Brownelli*, 182 Wis. 2d at 372, 514 N.W.2d at 49. If we determine that the complaint and the answer join issue, we examine the moving party's affidavits, to determine whether they establish a *prima facie* case for summary judgment. *See id.* If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *See id.* at 372–73, 514 N.W.2d at 49–50.[6]

¶ 7.   Whether a given covenant not to compete comports with the requirements of WIS. STAT. § 103.465 is a mixed question of law and fact. *See NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 839–40, 520 N.W.2d 93, 97 ( Ct. App. 1994). Additionally, whether a restrictive covenant is reasonably necessary to protect the employer depends on the totality of the circumstances and is a question of law to be resolved on the basis of either factual findings made by the circuit court or a stipulation of all the relevant facts by the parties. *See id.*

---

[6] All of the facts stated above are taken from the parties' filings that were before the circuit court for its consideration of the summary judgment motion.

**Restrictive Covenant.**

¶ 8. Wisconsin law favors the mobility of workers. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 214, 267 N.W.2d 242, 248 (1978); *Milwaukee Linen Supply Co. v. Ring*, 210 Wis. 467, 473, 246 N.W. 567, 569 (1933) (citation omitted). As a result, a contract which operates to restrict trade or competition is *prima facie* suspect and will be liberally construed in favor of the employee. *See Wausau Med. Ctr., S.C. v. Asplund*, 182 Wis. 2d 274, 281, 514 N.W.2d 34, 38 (Ct. App. 1994). The legislature codified that policy in WIS. STAT. § 103.465,[7] which provided in relevant part:

> A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

¶ 9. Nonetheless, restrictive covenants may serve to prevent the dissemination of confidential business information necessary to the employer and may prevent unfair competition. *See Wausau Med. Ctr.*, 182

---

[7] 1995 Act 225, § 347, effective May 1, 1996, amended WIS. STAT. § 103.465 to make it gender neutral and 1997 Act 253, § 81, effective June 19, 1998, made minimal word changes, none of which affect the substantive meaning of the statute, as we interpret it in this opinion.

Wis. 2d at 283, 514 N.W.2d at 38–39. However, an " 'employer is not entitled to be protected against legitimate and ordinary competition of the type a stranger could give.' " *Id.* at 283, 514 N.W.2d at 39 (citation omitted). The supreme court has also explained that competition based on the ordinary skills and experience an employee has acquired through working for an employer is not unfair competition. *See Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 822, 235 N.W.2d 690, 693 (1975). In order for a covenant not to compete to be enforceable, it "must (1) be necessary for the protection of the employer; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy." *Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 470–71, 309 N.W.2d 125, 128–29 (Ct. App. 1981) (citation omitted).

¶ 10.   The parties do not discuss whether this covenant not to compete has been proven to be reasonably necessary to protect a legitimate business interest of F CS.[8] That determination is dependent upon consideration of factual matters which, unless there is a stipulation of all material facts, is inappropriate for resolution on summary judgment because the circuit court must consider at least the following: (1) the nature and character of the information sought to be protected; (2) the extent to which its secrecy is vital to the employer's ability to conduct its business; (3) the extent to which the information could be had elsewhere; (4) the extent to which the restraint inhibits the

---

[8] The employer has the burden of proving the reasonable necessity of a restrictive covenant before it can be enforced. *See Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 388, 302 N.W.2d 76, 77 (Ct. App. 1981).

employee's ability to pursue a livelihood in the area of his personal skills; and (5) the extent to which a stranger could compete in the provision of the services the former employee would be restrained from providing. *See Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157, 163, 98 N.W.2d 415, 419 (1959); *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752, 757 (1981); *Wausau Med. Ctr.*, 182 Wis. 2d at 287, 514 N.W.2d at 40. Additionally, what is reasonable changes from case to case, so that what may be unreasonable in one case is not in another. *See Wausau Med. Ctr.*, 182 Wis. 2d at 285, 514 N.W.2d at 39 (citation omitted). Therefore, because we have not been presented with a stipulation of all material facts, if we were asked to determine whether the restrictive covenant FCS seeks to enforce is reasonably necessary to protect a legitimate business interest of FCS, we would not be able to do so on the record before us.

¶ 11.   However, instead of addressing whether the covenant is reasonably necessary to protect the employer, FCS and Wysocki focus their arguments on whether the covenant that FCS seeks to enforce "specified" a territory, as is required by WIS. STAT. § 103.465. It is possible for a restrictive covenant to "specify" a territory through the use of a customer route, *see Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 754, 277 N.W.2d 787, 793 (1979), or through a geographic restriction which does not restrain the employee's activities in a geographic territory into which his former work has not taken him. *See Wisconsin Ice & Coal Co. v. Lueth*, 213 Wis. 42, 45, 250 N.W. 819, 820–21 (1933).

¶ 12.   Wysocki contends that between 1983, when the restrictive covenant was entered into, and 1998,

when he resigned and began his own tax preparation business, the territory within which FCS seeks to restrain him was unilaterally doubled in size. Therefore, the covenant which FCS seeks to enforce is not consistent with the non-competition agreement Wysocki signed in 1983. FCS contends that fact is irrelevant because the covenant restrains him from doing business only with people for whom he has provided services in the twelve months preceding his termination. It cites the supreme court's opinions in *Chuck Wagon* and *Hunter* as holding that a customer-based restrictive covenant is a specified territory which is a reasonable restraint on competition, as a matter of law.

¶ 13. As discussed earlier, we cannot determine, as a matter of law, that this restraint is reasonable, as the record is insufficient in regard to the necessary findings of fact. However, we do conclude, as a matter of law, that the restrictive covenant that FCS seeks to enforce applies within the twelve-county area described in its charter. However, in 1983, due to the charter of PCA of Wausau, that covenant could not have been applied to six of those twelve counties. Therefore, because FCS unilaterally enlarged the specified territory of the restrictive covenant beyond that to which the parties agreed in 1983, it is unenforceable.

¶ 14. The requirements for an enforceable customer-based statement of territory were examined in detail in *Chuck Wagon*. There, the supreme court considered whether a customer-based restraint that formed part of a lease for a sales route, where products were sold at the customer's place of business rather than at the employer's place of business, was reasonably necessary to protect the employer's business. In reaching its ultimate conclusion, the supreme court reasoned that there is a foundational difference

between a route salesperson and a non-route salesperson. It relied on *Van Zeeland* and its conclusion that route salespeople were different because they developed customers that "were dependent exclusively" upon the salesperson who provided goods or services to them. *See Chuck Wagon,* 88 Wis. 2d at 750, 277 N.W.2d at 791 (citing *Van Zeeland,* 84 Wis. 2d at 215, 267 N.W.2d at 249). We also note that in *Van Zeeland,* the court concluded that a post-employment prohibition on contacting Van Zeeland's customer list, without any additional geographic limitation, was held to be unenforceable:

> That paragraph provides that the employee will never, without time limitation, disclose the list of customers to any person. Even were this customer list a trade secret, subject to protection within a reasonable geographic area and for a reasonable period of time, this provision, which sets no limits with respect to either, is unreasonable and void.

*Van Zeeland,* 84 Wis. 2d at 218, 267 N.W.2d at 250. Therefore, reconciling *Van Zeeland* with *Chuck Wagon,* we conclude that the restriction on solicitation of route customers in *Chuck Wagon* complied with the requirement of WIS. STAT. § 103.465 to "specify" the territory because the geographic territory which Raduege served on the route and the route's customer list were coextensive. Stated another way, the prohibited customer list in *Chuck Wagon* did define a geographic territory, as well as those customers within it, because it covered only those businesses on Raduege's route; it did not cover persons in areas different from the route that Raduege rented from Chuck Wagon when the lease was signed.

¶ 15.   For the covenant at issue here, because of the geographic restriction of PCA of Wausau's charter, the 1983 non-competition agreement did have an unstated geographic restriction, just as Raduege's route provided an unstated geographic restriction in *Chuck Wagon.* The present covenant, when it was signed, applied to customers drawn from a geographic area comprised of only five counties and part of a sixth. The customers Wysocki served for PCA of Wausau could not have been drawn from a larger or from a different geographic area. In essence, those five and one-half counties were Wysocki's "route."

¶ 16.   However, in 1998, interpretation of the covenant consistent with the charter then applicable to F CS would preclude Wysocki from providing services to customers in twelve counties. Therefore, the customer list for which FCS seeks an injunction against Wysocki is no longer limited by what would have been the specified territory of the covenant in 1983. Rather, the geographic component of the covenant has been unilaterally doubled by FCS through the amendment of its charter.

¶ 17.   One could argue that the amended charter provided only an *attempted* change in the scope of the covenant because Wysocki did not agree to it. However, once the charter was amended, the covenant could not reasonably be interpreted to apply to only those counties to which it applied in 1983; and, FCS does not contend that it does.[9] Furthermore, restrictive covenants are "subject to common law contract principles

---

[9] The dissent suggests that we should enforce the restrictive covenant for the five counties and part of a sixth county covered by PCA of Wausau's charter in 1983. However, FCS has not argued to us that it wishes to enforce the covenant in only

as well as § 103.465, STATS., requirements." *NBZ*, 185 Wis. 2d at 836, 520 N.W.2d at 96. And the policies that underlie the statute prohibit "blue lining" a restrictive covenant by cutting back the restriction asserted by the employer to one which may be legally enforceable. *See Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 607–09, 348 N.W.2d 505, 508–09 (1984). Therefore, because PCA of Wausau's geographic territory of service was limited by its charter and applicable federal law in 1983 when the covenant was entered into and because of FCS's subsequent, unilateral enlargement of the geographic component of the "specified territory," we conclude the restrictive covenant is void and unenforceable against Wysocki.

¶ 18. Furthermore, we conclude that *Hunter*, a case on which FCS relies heavily, provides no support for the contention that this restrictive covenant has not changed the specified territory within which it is effective. There, the supreme court determined only one issue: whether a territorial limitation of a restrictive covenant was required to be expressed in geographic terms as an "absolute prerequisite to a valid and enforceable agreement." *See Hunter*, 101 Wis. 2d at 467, 304 N.W.2d at 755. It concluded that a statement of a geographic territorial limit is not always essential to a valid covenant not to compete; therefore, some customer-based restrictions may be reasonable.[10] *See id.* at 464, 304 N.W.2d at 754. However, because the record was insufficient to determine whether the cove-

---

those counties. *See Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 607–09, 348 N.W.2d 505, 508–09 (1984).

[10] There is a great deal of *dicta* in *Hunter*. Therefore, it must be read with care to separate out that which is necessary to the court's ultimate conclusion and that which is simply an interesting quote from another case.

nant before it was reasonable, it remanded the matter for further proceedings.[11] *See id.* The supreme court did not address the issue upon which our opinion turns: whether the restraint which the employer seeks to enforce has changed the "specified" territory over which the restrictive covenant was agreed to have an effect. Accordingly, we conclude that *Hunter* is not dispositive of this case.

## CONCLUSION

■

¶ 19.   Even if we were to assume, *arguendo*, that FCS is the same corporation as PCA of Wausau, because the restrictive covenant's "specified territory," as that term is used in WIS. STAT. § 103.465, has been unilaterally changed by FCS, we conclude that the restrictive covenant is void. Therefore, we affirm the judgment of the circuit court dismissing this action against Wysocki.

*By the Court.*—Judgment affirmed.

¶ 20.   DYKMAN, P.J. *(dissenting).* This appeal arises on summary judgment. As a result, our first task is to review the pleadings to determine whether a claim or cause of action has been stated and whether the answer presents a material factual issue. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). It is not clear whether the majority has concluded that the plaintiff fails at this stage of summary judgment methodology. That is one possible interpretation of the majority's opinion. Another possi-

---

[11] We reached the same result, a remand for a reasonableness determination, in *General Medical Corp. v. Kobs,* 179 Wis. 2d 422, 435, 507 N.W.2d 381, 386 (Ct. App. 1993).

ble interpretation is that the defendant is entitled to judgment on the affidavits and other material as a matter of law. *See* WIS. STAT. § 802.08 (1997–98). The analysis required is different depending upon the focus of the majority opinion. However, because this is a dissent, and because the first step in summary judgment methodology is to examine the pleadings, I will do so.

¶ 21. There is nothing in Farm Credit Services' complaint which suggests that its 1983 agreement with Wysocki covered three, six, twelve or forty-seven counties. There is nothing in Wysocki's answer which gives this information. Neither the complaint nor the answer tell us the number of counties in which Farm Credit Services was permitted to do business in 1998. The closest Wysocki comes to suggesting any of this are his assertions that: "The restrictive covenant includes geographical areas not contemplated or included in 1983 and is unreasonable in its scope" and "The plaintiff's business operations and customer base is totally changed from that of PCA in 1983." Following summary judgment methodology, one cannot avoid the conclusion that Farm Credit Services' complaint states a claim and Wysocki's answer raises issues of material fact.[1] We next examine Wysocki's affidavits and other material to determine whether he has made a prima facie case for summary judgment. The majority concludes that he has, based upon its determination that Farm Credit Services unilaterally changed the terms of Wysocki's contract.

---

[1] There could be significant debate as to whether Wysocki's answer pleads facts which create a dispute as to material fact. The portions of his answer which I have quoted are probably not material or are conclusions of law. But there are bigger problems with this case, and I will not discuss this issue further.

¶ 22. We therefore move from procedure to substantive law. The most significant factor here is that this is a contract case. It is affected by statutory factors, most notably WIS. STAT. § 103.465 (1983–84),[2] which places significant limitations on the right of parties to contract as they see fit. But before we reach the question of how § 103.465 affects the contract between Farm Credit Services and Wysocki, we must first determine whether the parties contracted with each other, and what that contract requires. The majority notes that Farm Credit Services "entered into a written contract with Wysocki" but goes no further. In particular, the majority does not consider what was required of the parties by their contract. I believe that this is a necessary and dispositive inquiry, and therefore, this is another area where I part company with the majority.

¶ 23. There are some basic concepts of contract law which have not, until now, been open to question. "[B]oth offer and acceptance are necessary for the creation of a contract." *Eisenberg v. Continental Cas. Co.*, 48 Wis. 2d 637, 652, 180 N.W.2d 726 (1970). When we conclude that parties have entered into a contract, certain rights and obligations flow from that conclusion. One basic conclusion which has been accepted in Wisconsin until now is that a party to a contract is not free to unilaterally change the material terms of that contract without the assent of the other party. *See Schaefer v. Dudarenke*, 89 Wis. 2d 483, 492, 278 N.W.2d 844 (1979). I cannot enter a contract to purchase 100 widgets at $37.50 per widget and then successfully have a court enforce my unilateral decision to pay only $25.00 per widget.

---

[2] All references to the Wisconsin Statutes are to the 1983–84 version unless otherwise noted.

¶ 24. Another concept of contract law unchallenged until now is that a contract is interpreted as of the date the parties entered the contract. This would seem to be a matter of common sense, but it is also the law: "In the construction of contractual provisions the prevailing idea is to glean the intent of the parties at the time such contract was executed." *Huntoon v. Capozza*, 57 Wis. 2d 447, 460, 204 N.W.2d 649 (1973). And we are to interpret contracts so as to uphold their validity rather than their invalidity.

> Many cases can be seen in which, when the words of the contract can be interpreted either in a way which would cause the contract to be valid or in a way which would result in invalidity, courts have chosen the former interpretation. This preference is based upon the judicial belief that the parties intend their agreement to be valid rather than invalid, lawful rather than unlawful, and honest and effective rather than fraudulent and voidable.

MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24.22 (Joseph M. Perillo ed., revised ed., LEXIS 1998) (footnotes omitted). The RESTATEMENT (SECOND) OF CONTRACTS adopts a similar concept, but in terms of "Standards of Preference in Interpretation:"

> In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:
> (a)   an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect . . . .

RESTATEMENT (SECOND) OF CONTRACTS § 203 (1981); *see also Variance, Inc. v. Losinske*, 71 Wis. 2d 31, 36–37, 237 N.W.2d 22 (1976).

540

¶ 25. By examining WIS. STAT. § 103.465 first, before determining what the parties intended in their contract, the majority has put the cart before the horse. It has interpreted a contract before determining whether the parties have entered into a contract. I believe that the proper way to analyze the effect of what the parties did is to begin at the beginning. The dispositive question to me is what the parties intended when they signed the document titled "EMPLOY-MENT AGREEMENT" on July 26, 1983. The employment contract is specific in its prohibition of certain post-employment competition:

> If the Employee ceases to be a PCA Employee, for any reason, the Employee shall not, for a period of one year immediately following the date of separation from PCA, directly or indirectly, engage in the business of tax preparation, tax consultation, book-keeping, or accounting, or any other duties performed as a tax consultant for PCA with the person(s) the Employee consulted or serviced in performance of his/her consultant duties at any time during the one year immediately prior to the date of separation.

¶ 26. On July 26, 1983, the parties intended that Wysocki would not compete with PCA (later, Farm Credit Services) by preparing taxes for persons who lived in a geographic area consisting of six counties.

¶ 27. Interpreting their contract as of July 26, 1983, as we must, *see Huntoon,* 57 Wis. 2d at 460, it is impossible to conclude that the contract covered twelve counties. Wysocki was never prohibited from competing with PCA or Farm Credit Services in the six counties the majority adds to the agreement in order to reach the conclusion that the agreement is void. Wysocki and PCA could have amended their contract

when PCA's territory was expanded to include twelve counties, but the undisputed fact is that they did not. The contract just remained in some file somewhere, awaiting this lawsuit.

¶ 28. How has the majority reached its conclusion? First, it has decided to interpret the employment contract so as to make it invalid rather than valid, thus violating the rule that we are to attempt an interpretation which leads to a valid contract. *See Variance*, 71 Wis. 2d at 36–37. Next, it has concluded that the parties' contract "has been unilaterally changed by FCS," thus adopting for the first time in Wisconsin the concept that a party can unilaterally *and validly* change the terms of a contract without the other party's assent.[3] It would not suffice to conclude that PCA attempted to unilaterally amend the contract. It is necessary that the contract actually was amended, and indeed, validly amended. It is necessary to the majority opinion that the employment contract embrace twelve counties. It is therefore necessary that something changed the contract from a contract covering persons living in six counties to one covering persons living in twelve counties. Ergo: the majority's conclusion that P CA was able to do what heretofore no-one has been able to do—unilaterally and validly amend a contract without the assent of the other party.

¶ 29. Farm Credit Services has asked for an injunction and damages for Wysocki's breach of the employment agreement by soliciting Farm Credit Ser-

_____

[3] By "validly" I mean that what PCA did by changing its territory to include twelve counties amended the contract to include a prohibition against competition in twelve counties. I do not mean that had the parties agreed to change the territory to twelve counties, this contract amendment would have been valid. That is a question I do not reach.

vices' customers in 1998. Whether Farm Credit Services is entitled to an injunction and the amount of its damages are matters which would have been determined at trial. It is commonplace to plead and argue damages in excess of those which one hopes to receive. I do not agree with the majority that by asking for damages in excess of those to which it might be entitled, Farm Credit Services has forfeited the right to receive damages in any amount. And on summary judgment, the question is not whether a party has made a prima facie case as to one claim, but whether a genuine issue exists as to any material fact, in which case a trial is necessary. *See Preloznik*, 113 Wis. 2d at 116. I conclude that there is a genuine issue of material fact as to whether Wysocki's 1983 employment agreement, encompassing the territory then in existence, was made void by WIS. STAT. § 103.465.

¶ 30. This leaves the issue of whether Farm Credit Services can enforce a contract between Wysocki and PCA. There is no question but that the pleadings raise this issue. Farm Credit Services' affidavits assert that Farm Credit Services is really PCA by another name. Wysocki claims that the mergers that occurred after 1983 resulted in Farm Credit Services having no continuing or chain of relationship with P CA. In part, the answer to this question depends upon the intent of the various parties whose actions resulted in the transfer from PCA to Farm Credit Services. The issue of intent is not one that is properly decided on a motion for summary judgment. *See Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 190, 260 N.W.2d 241 (1977). This is an issue that should be tried. *See Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis. 2d 460, 470–72, 304 N.W.2d 752 (1981) (discussing the problems with deciding reasonableness on

summary judgment in the context of a restrictive covenant).

¶ 31. I conclude that the majority: has interpreted the parties' contract so as to lead to its invalidity; has concluded that one party to a contract can unilaterally change a term in the contract without the assent of the other party; and has interpreted a contract as of a date far in the future from the date on which the parties agreed to the contract terms. I cannot agree to any of this, and therefore respectfully dissent.