Robert **HELMCHEN** and Judy Helmchen, individually and as parents of Christel Helmchen, deceased, and in their capacity as co-personal representatives of the Estate of Christel Helmchen, deceased, Appellants–Plaintiffs,

v.

**WHITE HEN PANTRY, INC.,** a Delaware Corporation, Appellee–Defendant.

No. 56A03–9609–CV–337.

Court of Appeals of Indiana.

Sept. 25, 1997.

A. James Sarkisian, Sarkisian Law Offices, Merrillville, for Appellants–Plaintiffs.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellee–Defendant.

## OPINION

STATON, Judge.

Robert and Judy Helmchen, individually and as representatives of the Estate of Christel Helmchen, deceased, bring this appeal contending that the trial court erred by granting summary judgment in favor of the defendant, White Hen Pantry, Inc ("WHP"). The Helmchens present two issues which we consolidate and restate as whether WHP owes a duty to its franchisees' employees to provide a secure workplace.

We affirm.

WHP is a franchisor of convenience stores. WHP entered into a franchise agreement with Wayne Whitacre for a convenience store to be operated in Valparaiso, Indiana. Christel Helmchen was a clerk in WHP's Valparaiso store. In the early morning of November 14, 1990, Christel was abducted from the store, raped and murdered. The Helmchens' brought suit against WHP claiming WHP was negligent by not providing adequate security at the Valparaiso store. WHP was granted summary judgment on the issue of duty.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627

N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### *Duty*

In order to recover under a theory of negligence, the Helmchens must establish: (1) a duty on the part of WHP to conform its conduct to a standard of care arising from its relationship with its franchisees or franchisees' employees, (2) a failure by WHP to conform its conduct to the requisite standard of care required by the relationship, and (3) an injury to the Helmchens proximately caused by the breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh. denied.* Generally, the issue of duty is a question of law. *Id.* However, Indiana law recognizes that a factual question may be interwoven with the determination of the existence of a relationship between the parties, making the ultimate determination of the existence of a duty a mixed question of law and fact. *Ramon v. Glenroy Const. Co., Inc.*, 609 N.E.2d 1123, 1128 (Ind.Ct.App.1993), *trans. denied.* In other words, a duty may exist if a certain set of facts is found, notwithstanding that the law does not recognize a general direct duty based upon the parties' legal relationship. *Id.* Such a mixed question of law and fact presents itself in this case.

There is no general direct duty to provide a secure workplace owed by a franchisor to employees of its franchisees. However, a duty may arise depending on the extent of control a franchisor has over the operations of the franchise. *Whitten v. Kentucky Fried Chicken Corp.*, 570 N.E.2d 1353, 1356 (Ind.Ct.App.1991), *reh. denied, trans. denied.* See also *Clem v. Steveco, Inc.*, 450 N.E.2d 550, 555 (Ind.App.Ct.1983); *Coty v. U.S. Slicing Machine Co., Inc.*, 58 Ill.App.3d 237, 15 Ill.Dec. 687, 373 N.E.2d 1371 (1978). Thus, the issue of a franchisor's duty to its franchisee's employees hinges on the control of the franchisor over the franchisee's operations, a question of fact. *Clem*, 450 N.E.2d at 555.

To establish the requisite control, the Helmchens rely on the following: the franchisee was required to follow WHP plans for fixtures, equipment, signs, exterior presentation, inventory, displays and advertising; WHP provided each store with a training coordinator and counselor who would visit the store monthly; WHP directed the handling of cash, inventory, perishables, sanitation, hygiene, pest control, cleaning, check cashing, general maintenance, loss prevention, customer and vendor dishonesty, and errors in paperwork and pricing. WHP also required its franchises to maintain a consistent image which included the wearing of a WHP uniform. The operating manual could be amended from time to time, and failure to follow any of the mandatory procedures in the operating manual constituted cause for termination of the agreement.

This control is not insignificant, but it is not total either. These mandatory procedures are intended to assure uniformity of operation and appearance, and to protect the WHP trademark and the good will associated with it. Courts which have addressed the issue of duty require franchisors to exercise more than the right to control uniformity of appearance, products and administration in order to find a duty. *See Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W.2d 390, 394 (1990); *Salisbury v. Chapman Realty,* 124 Ill.App.3d 1057, 80 Ill.Dec. 336, 465 N.E.2d 127, 131 (1984); *Coty,* 15 Ill.Dec. 687, 373 N.E.2d at 1374. Too, the right to terminate a franchise agreement should the franchisee not follow mandatory procedures is generally insufficient to establish the requisite control. *Whitten,* 570 N.E.2d at 1356; *Little,* 455 N.W.2d at 394; *Coty,* 15 Ill.Dec. 687, 373 N.E.2d at 1376.

Where courts have found a duty, the duty has arisen because the franchisor had control over the specific "instrumentality" which allegedly caused the harm. In *Whitten,* an employee of a franchisee sued the franchisor after he suffered severe burns while cleaning a fryer. Franchisees were permitted to purchase fryers only from manufacturers ap-

proved by the franchisor. Since the franchisor had some control over the injury causing instrumentality—the fryer—we held that there was a genuine issue of material fact as to the degree of control the franchisor exerted over this equipment and whether the franchisor owed a duty to its franchisees' employees regarding fryers used in its restaurants. *Whitten,* 570 N.E.2d at 1357; *see also Wise v. Kentucky Fried Chicken Corp.,* 555 F.Supp. 991 (D.C.N.H.1983) (duty exists where franchisor had control over equipment alleged to have caused injury to franchisee's employee). Thus, the relevant inquiry is whether there is a genuine issue of material fact as to the extent WHP controlled security measures at its convenience stores.

The Helmchens have not directed us to any mandatory procedures or other dictates from WHP relating to security. Uncontradicted testimony from WHP's director of loss prevention is that security measures are solely the province of the franchisee. Store inspections are not conducted for security.

In response, the Helmchens rely on correspondence from WHP's director of loss prevention and the section of WHP's operation manual addressing robberies. One such letter discusses WHP's video surveillance policy. Apparently, this letter was in response to inquiries from franchisees. The letter does not recommend video surveillance as an effective crime deterrent, but does provide certain mandates in the event a franchisee chooses to employ video surveillance. Another letter addresses prevention strategies when confronted with an armed robbery situation. A third letter offers methods to reduce risk associated with theft and robbery. Finally, the Helmchens point to the operation manual which addresses useful techniques when confronted with an armed robbery.

As noted above, none of the correspondence issued mandatory security measures.[1] Rather, WHP was either responding to inquiries from its franchisees or sharing useful security knowledge it has gained from engaging in the convenience store business over the years. The correspondence appears cal-

---

1. The video system policy does mandate the types and location of equipment should a franchisee choose to use video surveillance. However, video surveillance itself was not required or forbidden, and, in any event, this particular store did not employ video surveillance.

culated to heighten awareness regarding security issues and to offer suggestions for addressing criminal activity at convenience stores. In order for a duty to arise, the control must consist of more than the mere making of suggestions or recommendations. *Whitten*, 570 N.E.2d at 1356; *Clem*, 450 N.E.2d at 555. Accordingly, the trial court did not err by finding that there was no genuine issue of material fact as to whether WHP owed a duty to its franchisee's employees to provide a secure workplace.

Affirmed.[2]

GARRARD and RUCKER, JJ., concur.

---

**2.** Using the same facts above, the Helmchens have also asserted that WHP voluntarily assumed a duty to provide a secure workplace, relying on *Decker v. Domino's Pizza, Inc.*, 268 Ill.App.3d 521, 205 Ill.Dec. 959, 644 N.E.2d 515 (1994). However, in *Decker* the defendant actually mandated security measures and ensured compliance therewith through inspections. This line of argument is simply a restatement of the "control" argument under a different name. As noted in *Decker*, any duty is limited to the extent of its undertaking. Rephrased in the context of the franchise setting, duty is limited to the extent of control a franchisor exerts over the franchise. As discussed above, there is no general duty on the part of WHP to provide a secure workplace, but WHP can voluntarily assert control over security thereby giving rise to a duty. The "control" analysis is simply an assumption of duty analysis specifically applied to the franchise setting. In this case, the determinations of whether WHP owed a general direct duty and whether WHP assumed a duty collapse into the same inquiry.