FARM CREDIT SERVICES OF NORTH CENTRAL WISCONSIN,
ACA, Plaintiff-Appellant-Petitioner,

v.

David WYSOCKI, Defendant-Respondent.

Supreme Court

*No. 99–1013. Oral argument January 31, 2001.—Decided May
30, 2001.*

2001 WI 51

(Also reported in 627 N.W.2d 444.)

For the plaintiff-appellant-petitioner there were briefs by *Jerry W. Slater* and *Kelley, Weber, Pietz &*

*Slater, S.C.*, Wausau, and oral argument by *Jerry W. Slater.*

For the defendant-respondent there were briefs by *Gary L. Dreier* and *First Law Group, S.C.*, Stevens Point, and oral argument by *Gary L. Dreier.*

An amicus curiae brief was filed by *Eric H. Rumbaugh, Donald A. Daugherty, David A. Dixon* and *Michael Best & Friedrich, LLP*, Milwaukee, and oral argument by *Eric H. Rumbaugh* on behalf of Wisconsin Manufacturers and Commerce.

¶ 1. JON P. WILCOX, J. This case presents two issues. The first issue is whether the restrictive covenant in David Wysocki's (Wysocki) 1983 employment agreement with Production Credit Association (PCA) of Wausau is void as a matter of law because the geographic area in which PCA of Wausau was authorized to conduct business was expanded through a 1986 merger. Because we find that the covenant not to compete here is narrowly tailored to a customer list and does not contemplate a geographic restriction, we rule that it is not per se invalid. Therefore, we remand the case to the circuit court to determine whether the covenant not to compete was "reasonably necessary for the protection of the employer or principal." Wis. Stat. § 103.465 (1997–98).

¶ 2. The second issue is whether Farm Credit Services (FCS) is the same corporation as PCA of Wausau, which contracted with Wysocki in 1983. Reviewing the two plans of merger in light of the relevant statutes, we conclude that PCA of Wausau is the surviving corporation of both mergers and, therefore, FCS is entitled to enforce the covenant not to compete provision in Wysocki's employment agreement. Accord-

ingly, on both issues, we determine that summary judgment in favor of Wysocki was inappropriate.

¶ 3. FCS brought this action against Wysocki to enforce a covenant not to compete provision in his 1983 employment agreement with PCA of Wausau. Wysocki moved for summary judgment, arguing that Wysocki did not contract with FCS. The circuit court for Portage County, Judge James M. Mason presiding, found that FCS was not the same entity as PCA of Wausau and, therefore, was not entitled to enforce the covenant. The circuit court also granted summary judgment in favor of Wysocki on the ground that the covenant not to compete was unilaterally enlarged through the two mergers and was thus void. The court of appeals, in a split decision, affirmed the decision of the circuit court. *Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 2000 WI App 124, ¶ 19, 237 Wis. 2d 522, 614 N.W.2d 1. The majority assumed, "arguendo, that FCS is the same corporation as PCA," but that the covenant not to compete was void because the " 'specified territory,' as that term is used in Wis. Stat. § 103.465, has been unilaterally changed by FCS." *Id.* at ¶ 19. We then granted FCS's petition for review.

I

¶ 4. The basic facts are undisputed for the purposes of this review on motion for summary judgment. In 1983 Wysocki signed an employment agreement with PCA of Wausau as a "Related Services Coordinator/Loan Officer" in order to provide "accounting, bookkeeping, or prepare tax returns for PCA membership." PCA of Wausau was authorized to serve five counties and part of a sixth: Lincoln, Marathon, Portage, Price, Wood, and a portion of Taylor. As stated in its employment contract with Wysocki, PCA of Wausau

"is a corporation under the Farm Credit Act of 1971, as amended, and is in the business of making agricultural loans and providing related services, including bookkeeping, accounting, and income tax consultation and service for its customers." This employment contract contained the following covenant not to compete:

> Post-employment Competition. In consideration of the special training and materials provided to Employee by PCA and the preparation of tax returns for persons engaged in agriculture and confidential information made available to Employee by PCA concerning the financial affairs of its members, including, in particular, information generated by the Agrifax program, it is agreed that the Employee's activities shall be restricted in accord with this paragraph. If the Employee ceases to be a PCA Employee, for any reason, the Employee shall not, for a period of one year immediately following the date of separation from PCA, directly or indirectly, engage in the business of tax preparation, tax consultation, bookkeeping, or accounting, or any other duties performed as a tax consultant for PCA with the persons(s) [sic] the Employee consulted or serviced in performance of his/her consultant duties at any time during the one year immediately prior to the date of separation. Person(s) includes individuals, sole proprietorships, partnerships, and corporations.

It is undisputed that this covenant is aimed at preventing Wysocki from providing various accounting services to PCA of Wausau customers whom he had serviced in the year prior to his separation.

¶ 5. In 1986, three years after Wysocki signed the employment agreement, PCA of Wausau merged with PCA of Antigo and PCA of Neillsville. The agree-

310

ment of merger provided that PCA of Wausau would be the "continuing association and its charter and bylaws shall be those of the continuing association." Pursuant to the merger agreement, PCA of Wausau was renamed PCA of North Central Wisconsin. This merger effectively enlarged the geographical area in which PCA of Wausau had been chartered to operate from almost six counties to twelve counties. Five years after that, in 1991, PCA of North Central Wisconsin entered into an "Agreement and Plan of Merger" with Federal Land Bank of North Central Wisconsin, in which PCA of North Central Wisconsin was named as the "surviving association." The Agreement and Plan of Merger further specified that PCA of North Central Wisconsin's name would then "be changed to Farm Credit Services of North Central Wisconsin, ACA." Throughout this entire period, Wysocki continued working for PCA of Wausau, renamed PCA of North Central Wisconsin, and subsequently renamed FCS, preparing tax returns for various customers.

¶ 6. However, on November 30, 1998, FCS alleges that Wysocki informed his supervisor that he was leaving FCS and that he intended to solicit FCS' customers whose returns he had prepared during 1997. FCS further alleges that Wysocki then solicited FCS customers for whom he had prepared tax returns in 1997. In order to enforce the covenant not to compete, FCS filed suit against Wysocki. The circuit court granted Wysocki's motion for summary judgment and the court of appeals affirmed.

## II

¶ 7. This case is before us on review of summary judgment. It is well established that we review a grant

of summary judgment by applying the same methodology as the circuit court. *Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 12, 236 Wis. 2d 137, 613 N.W.2d 110. "Summary judgment will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

¶ 8. We first are presented with a question of law regarding the construction of a covenant not to compete in an employment contract. *Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979). We review this question of law de novo. *Id.* We begin our review by determining whether the covenant not to compete provision is per se invalid.

¶ 9. In Wisconsin, covenants not to compete are regarded with suspicion by the courts because the law seeks to "encourage[ ] the mobility of workers." *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 214, 267 N.W.2d 242 (1978). Indeed, because free movement and personal liberty of employees are pre-eminent features of employment relations in this state, we have remarked that "so long as a departing employee takes with him no more than his experience and intellectual development that has ensued while being trained by another, and no trade secrets or processes are wrongfully appropriated, the law affords no recourse." *Id.* Consistent with encouraging the free movement of employees, we have applied the following canons of construction to covenants not to compete: (1) such covenants are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the lan-

guage of the contract absolutely requires; and (4) they are to be construed in favor of the employee. *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984).

¶ 10. These canons are grounded in Wis. Stat. § 103.465 (1997–98),[1] which sets forth the law on covenants not to compete in our state:

> A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

As we recently observed, this statute "evidences a strong public policy against the enforcement of trade restraints which are determined to be unreasonable

---

[1] Although Wis. Stat. § 103.465 is unchanged, on remand, the circuit court must determine whether the covenant not to compete was reasonable at the time FCS alleged Wysocki violated the agreement. *See Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 607, 348 N.W.2d 505 (1984) (analyzing covenant not to compete under Wis. Stat. § 103.465 (1981–82) at the time the employer sought to enforce the agreement in circuit court); *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 752–54, 277 N.W.2d 787 (1979) (analyzing reasonableness of agreement at the time the employer alleged the employee violated the agreement). Because FCS alleges that Wysocki violated the agreement in 1998 after Wysocki left FCS, the 1997–98 version of the Wisconsin Statutes should be utilized.

upon all employees." *Tatge v. Chambers & Owen, Inc.,* 219 Wis. 2d 99, 114–15, 579 N.W.2d 217 (1998).

¶ 11. But we cannot allow the underlying policy of Wis. Stat. § 103.465 and our rules of construction to overwhelm the focus of our analysis in what are, at their core, contract cases. In these cases, we necessarily must focus on the individual contracts. Hence, we begin our analysis of this issue by scrutinizing the language of the covenant not to compete in Wysocki's employment contract. *See Streiff,* 118 Wis. 2d at 610.

¶ 12. The standard rules of contract interpretation apply: the primary goal in contract interpretation is to determine and give effect to the parties' intention at the time the contract was made. *Wisconsin Label v. Northbrook Prop. & Cas. Ins.,* 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276. When the language is unambiguous, we apply its literal meaning. *Id.* If, on the other hand, we determine that a contract provision is ambiguous, we then look to extrinsic evidence to discern its meaning. *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996). In sum, if the provision is not invalid per se and is unambiguous, we uphold its plain meaning. Therefore, we first look to whether the covenant not to compete is invalid per se.

¶ 13. The covenant not to compete at issue here is a customer list limitation rather than a geographical restriction. It prevents Wysocki from servicing those customers he "consulted or serviced in the performance of his[ ] consultant duties at any time during the one year immediately prior to the date of separation." In *Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis. 2d 460, 304 N.W.2d 752 (1981), we considered whether a similar—albeit much broader—customer list limitation was invalid as a matter of law. There, two employees of

an insurance agency challenged a covenant not to compete that prevented them from soliciting business from any of the agency's customers for the lesser of either two years after the employment relationship ended or the duration of the employment relationship. *Id.* at 462–63. Reasoning that the term "specified territory" in § 103.465 encompasses customer lists as well as geographical restrictions, we stated that "[a] flat rule invalidating all restrictive covenants whose scope exceeded a former employee's actual customer contact would amount to a declaration that it is never reasonably necessary to protect an employer against improper use of information about customers with whom the employee did not have actual contact." *Id.* at 466, 468. Accordingly, we ruled that such a covenant is not invalid per se and remanded the cause to the circuit court to determine whether, given the totality of the circumstances, the covenant in question was reasonable and enforceable. *Id.* at 464, 471.

¶ 14.　Here, we are presented with a covenant that is more narrowly tailored than the covenant at issue in *Hunter*. Rather than including all of PCA of Wausau's customers during the period of Wysocki's employment, the covenant not to compete provision here includes only the customers that Wyscocki serviced in the year prior to his date of separation. Furthermore, whereas the covenant in *Hunter* effectively restricted each of the two employees for two years after the separation, the covenant here restricts Wysocki for only one year after separation. Therefore, under *Hunter*, we cannot conclude that this covenant not to compete is invalid per se, especially when this covenant is less restrictive than the covenant we examined in *Hunter*. *See also Chuck Wagon Catering, Inc. v. Raduege,* 88 Wis. 2d 740, 754, 277 N.W.2d 787

(1979) (noting that "in Wisconsin a restrictive covenant protecting an employer's customer contacts in a situation of necessity will be enforced provided the restraint is reasonable").

¶ 15. Attempting to avoid our *Hunter* decision, Wysocki urges, and the court of appeals accepted, the argument that because the two mergers "unilaterally enlarged the specified territory of the restrictive covenant beyond that to which the parties agreed in 1983, it is unenforceable." *Farm Credit Services*, 2000 WI App 124 at ¶ 13. This argument, however, is flawed because it discounts the plain terms of the covenant and our decision in *Hunter*. Wysocki's covenant not to compete with PCA of Wausau anticipated enlargement as well as contraction of the "specified territory," which is the list of customers that Wysocki serviced in the year prior to his separation from PCA of Wausau. As evidenced by the terms, the parties contemplated a fluid customer list limitation rather than a rigid geographical restriction. In accordance with the policy of encouraging the freedom of movement of employees and protecting their personal liberty, such fluid customer list limitations should be given greater breadth than rigid geographical restrictions because they oftentimes "more closely approximate[ ] the area of the employer's vulnerability to unfair competition by a former employee and [do] not deprive the employee of legitimate competitive opportunities to which he is entitled." *Hunter*, 101 Wis. 2d 466. Furthermore, there is no mention of any geographical territory, such as a county or counties, or any extraneous document, such as a charter, in the covenant at hand. The absence of a reference to PCA of Wausau's charter is especially telling; it is difficult to understand how a change in the

charter that does not otherwise alter the legal capacity or standing of either party would affect the covenant not to compete, which fails to reference the charter. Thus, looking at the plain terms of the covenant, we reject Wysocki's argument that the two mergers have somehow unilaterally enlarged the "specified territory" of the agreement.

¶ 16. Because the covenant at issue here is not per se invalid, we remand the cause to the circuit court to develop the evidentiary record in order to determine whether the covenant is reasonable under § 103.465 (1997–98). On remand, FCS will be permitted to develop facts about whether the restriction was reasonably necessary for the protection of its legitimate business interests. *Id.* at 468. To counter FCS, Wysocki can develop facts about whether the restraint unreasonably inhibited his ability to pursue a livelihood in his field. *Id.* at 470; *see also Chuck Wagon*, 88 Wis. 2d at 754–55 (observing that evidence at trial indicated that the defendant had experience in other lines of work and that the covenant at issue did not prohibit him from working in that particular line, only from soliciting Chuck Wagon customers). As we observed in *Hunter*, these considerations are not exhaustive. *Id.* They are merely several of the issues within the totality of circumstances that the circuit court should examine to determine whether the covenant not to compete is reasonable under § 103.465.

### III

¶ 17. Wysocki, however, argues that PCA of Wausau has been merged out of existence. FCS, according to Wysocki, was not yet in existence when he signed

317

his employment agreement with PCA of Wausau. Therefore, as a matter of law, FCS cannot enforce the covenant not to compete as part of the 1983 employment agreement between PCA of Wausau and Wysocki. Again, we are confronted with a question regarding the interpretation of legal documents, the merger agreements, which we review de novo in light of the relevant merger statutes. *Jones*, 88 Wis. 2d at 722. Merger agreements are contracts; our objective in interpreting such contracts is to ascertain the intent of the parties. *Roth v. City of Glendale*, 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467. As noted above, we do not look to extrinsic evidence outside the four corners of the document unless we determine that it is ambiguous. *Energy Complexes, Inc. v. Eau Claire County*, 152 Wis. 2d 453, 467–68, 449 N.W.2d 35 (1989). Therefore, we begin our analysis by looking to the relevant merger statutes and to the plain language of the merger agreements.

¶ 18. The first merger took place in 1986. In regard to this merger, Wis. Stat. § 180.62 (1985–86) sets forth the appropriate procedure:

> Procedure for merger. (1) Any 2 or more domestic corporations may merge into one of such corporations pursuant to a plan of merger approved in the manner provided in this chapter.
>
> (2) The board of directors of each corporation shall, by resolution adopted by each such board, approve a plan of merger setting forth:
>
> (a) The names of the corporations proposing to merge, and the name of the corporation into which they propose to merge, hereinafter designated the surviving corporation;
>
> (b) The terms and conditions of the proposed merger;

. . .

 (e) Such other provisions with respect to the proposed merger as deemed necessary or desirable.

The 1986 agreement of merger states, in accordance with the above statute, that "[t]he Production Credit Association of Antigo and the Production Credit Association of Neillsville shall merge into the Production Credit Association of Wausau which shall be the continuing association and its charter and bylaws shall be those of the continuing association." The agreement further indicates that "[t]he name and location of the continuing association shall be the Production Credit Association of North Central Wisconsin, Wausau, Wisconsin." Therefore, in accordance with § 180.62, the agreement provided the names of the three corporations that were to be merged, that PCA of Wausau would be the continuing association, and that the continuing association would be renamed Production Credit Association of North Central Wisconsin.

¶ 19. The effect of this statutory merger is explained in Wis. Stat. § 180.67 (1985–86):

> Effect of merger or consolidation. When any merger or consolidation has been effected in accordance with this chapter:
>
> (1) The several corporations parties to the plan of merger or consolidation shall be a single corporation, which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation, and, in the case of a consolidation, shall be the new corporation provided for in the plan of consolidation.
>
> (2) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease. . . .
>
> . . .

(4) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act. . . .

The plain language of this statute, read in conjunction with the agreement of merger, indicates that PCA of Wausau was the surviving corporation, which was then renamed PCA of North Central Wisconsin. Consequently, PCA of North Central Wisconsin could have enforced the covenant not to compete in Wysocki's employment agreement after the 1986 merger was executed. In short, the 1986 merger did not change the parties to the 1983 employment contract.

¶ 20. The second "Agreement and Plan of Merger" is dated April 4, 1991. The relevant merger statute at that time, Wis. Stat. § 180.1101 (1991–1992), provided, in pertinent part:

Merger. (1) One or more corporations may merge into another corporation if the board of directors of each corporation, by resolution adopted by each board, approves a plan of merger and, if required by s. 180.1103, its shareholders also approve the plan of merger.

(2) The plan of merger shall set forth all of the following:

(a) The name of each corporation planning to merge and the name of the surviving corporation into which each other corporation plans to merge.

320

(b) The terms and conditions of the merger.

In accordance with this merger statute, the 1991 "Agreement and Plan of Merger" states that PCA of North Central Wisconsin would merge with Federal Land Bank Association of North Central Wisconsin and that PCA of North Central Wisconsin "shall be the surviving association. . . ." The agreement further specifies that PCA of North Central Wisconsin's "name shall be changed to Farm Credit Services of North Central Wisconsin, ACA." Again, the Agreement and Plan of Merger set forth the corporations that would be merging, that PCA of North Central Wisconsin would be the surviving association, and that it would be renamed FCS, which is in accordance with the relevant merger statute in 1991, § 180.1101. The effect of a 1991 merger is delineated in § 180.1106 (1991–92):

> Effect of merger or share exchange. (1) All of the following occur when a merger takes effect:
> (a) Every other corporation that is party to the merger merges into the surviving corporation and the separate existence of every corporation party to the merger except the surviving corporation ceases.
> (b) The title to all property owned by each corporation that is party to the merger is vested in the surviving corporation without reversion or impairment.
> (c) The surviving corporation has all liabilities of each corporation that is party to the merger.
> . . .

Under this statute, FCS—the surviving corporation formerly known as PCA of North Central Wisconsin—took over all of Federal Land Bank Association of

North Central Wisconsin's assets and liabilities.[2] There is nothing in the "Agreement and Plan of Merger" that abrogates any contract—employment or otherwise—that PCA of North Central Wisconsin had with any party.

■

¶ 21. Accordingly, we conclude that FCS may enforce the covenant not to compete in its employment contract with Wysocki. Wysocki has not raised any

---

[2] We note that this statute is based on the Model Business Corporation Act § 11.07 "Effect of Merger or Share Exchange." We have previously utilized the official commentary to substantially similar Model Business Corporation Act statutes to inform our discussion of the legislative intent of Wisconsin Business Corporations statutes. *See Einhorn v. Culea*, 2000 WI 65, ¶ 29, 235 Wis. 2d 646, 612 N.W.2d 78. The official commentary to the Model Business Corporation Act § 11.07 states:

> [I]n the case of a merger the survivor and the parties that merge into the survivor become one. The survivor automatically becomes the owner of all real and personal property and becomes subject to all the liabilities, actual or contingent, of each party that is merged into it. A merger is not a conveyance, transfer, or assignment. . . .It does not give rise to a claim that a contract with a party to the merger is no longer in effect on the ground of nonassignability, unless the contract specifically provides that it does not survive a merger.

Model Bus. Corp. Act Ann. §§ 11–71 (3d ed. Supp. 1998–1999). According to this commentary, a surviving corporation can enforce a contract that a party entered into with a merged corporation over the objection that it was not assigned by the merged corporation. Following this commentary, even if PCA of Wausau ceased to exist, FSC could enforce the covenant not to compete. However, because we find that PCA of Wausau is the surviving corporation, merely renamed FSC, by the plain language of the merger agreement read in light of the merger statute, we do not need this official commentary to discern the legislative intent of Wis. Stat. § 180.1106 here.

ambiguities in either of the merger documents that compel us to look beyond their four corners in order to determine the intent of the parties. Moreover, because we determine that PCA of Wausau, which was merely renamed FCS after the 1991 merger, is the surviving corporation of both mergers, we do not need to reach whether Wysocki's covenant not to compete is severable from his employment agreement and whether his continued employment amounts to an implied assignment of that covenant.

## IV

¶ 22. In sum, we find that Wysocki's covenant not to compete with FCS is not invalid per se as a customer list limitation; this provision is less restrictive than the covenant we examined in *Hunter*, which we likewise determined was not invalid per se. 101 Wis. 2d at 468. On this first issue, we remand the cause to the circuit court to determine whether the covenant meets the requirements of Wis. Stat. § 103.465 .(1997–98). Furthermore, we find that PCA of Wausau survived both mergers and, therefore, FCS is entitled to enforce its employment contract with Wysocki. Accordingly, we conclude that summary judgment in favor of Wysocki on both issues was inappropriate.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 23. WILLIAM A. BABLITCH, J., did not participate.

¶ 24. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree that the cause should

323

be remanded to the circuit court for further fact-finding. But I write separately to state that a preliminary question of fact, which in my opinion the majority has improperly answered as a matter of law, is whether the parties intended the scope of the 1983 covenant not to compete to be expanded geographically as the corporation's powers under the federal charter expanded.

¶ 25. The majority opinion correctly states our longstanding canons of construction for covenants not to compete, canons based on Wis. Stat. § 103.465 (1997–98): Covenants not to compete are prima facie suspect; they must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and they are to be construed in favor of the employee.[1]

¶ 26. Yet in analyzing the covenant not to compete at issue in this case, the majority concludes that "[t]he standard rules of contract interpretation apply."[2] The majority also concludes that "our rules of construction [cannot] overwhelm the focus of our analysis in what are, at their core, contract cases."[3]

¶ 27. The internal contradiction in the majority opinion is manifest. If special canons of construction apply to covenants not to compete, then the standard rules for contract interpretation do not apply in their totality. The legislature has not impermissibly "overwhelmed" contract law by creating an exception to the ability of employers and employees to negotiate to restrict employees' ability to work. Rather, the legislature has expressly concluded that the principle of free movement of employees, which this court recently

[1] *See* majority op. at ¶ 9.
[2] *See* majority op. at ¶ 12.
[3] *See* majority op. at ¶ 11.

extolled in *Mackenzie v. Miller Brewing Co.*, 2001 WI 23, 241 Wis. 2d 700, 623 N.W.2d 739, must guide our analysis of restrictive covenants.

¶ 28. Applying the principles mandated by the legislature and this court's precedent, I conclude that it is an open question of fact whether the covenant not to compete anticipated enlargement of the specified territory. In so concluding, I am mindful of the special nature of the employer, whose geographical scope and range of services have at all times been defined by federal law and federal charter. The federal law and the charter have changed since the employment contract was entered, allowing the geographical scope and range of services of the employer's business to expand.

¶ 29. The majority concludes as a matter of law that the parties contemplated a "fluid customer list."[4] But contemplation of a fluid customer list is not necessarily the same as contemplation of changes in federal law and in a federal charter that allow an employer to service customers that were previously off limits to the employer. The majority rejects this argument, finding that the changes in the employer's charter cannot affect the covenant not to compete because the "covenant" fails to refer to the charter.[5] The covenant not to compete is, however, part of the employment contract, and the employment contract does explicitly refer to the applicable law governing PCA. Recital A of the employment contract states that "PCA is a corporation under the Farm Credit Act of 1971, as amended."

¶ 30. In any event, it is an odd contortion of the "standard rules of contract interpretation" to conclude that an employer's federal charter is not relevant to interpreting an employment contract unless the fed-

---

[4] *See* majority op. at ¶ 15.

[5] *See* majority op. at ¶ 15.

eral charter is expressly referred to.[6] Under the facts of this case, the employee may be able to demonstrate that he and the employer signed the employment contract (including the covenant not to compete) in reliance on the federal charter, which limited the scope of his employer's service area to six counties at the time the contract was entered. Surely the federal charter would be relevant to the parties' intent. The issue of the parties' intent appears to me to be an open question of fact that cannot be resolved at the summary judgment stage, particularly in light of our precedent requiring narrow construction of covenants not to compete.

¶ 31. Finally, I take issue with the majority opinion's unwarranted conclusion in footnote 2 that "even if PCA of Wausau ceased to exist, FCS could enforce the covenant not to compete."[7] In contrast, the employer in this case apparently concedes, relying on precedent, that it may not enforce the covenant not to compete against the employee if this court concludes that the 1983 corporation has been merged out of legal existence.[8] Ignoring this concession, the footnote nevertheless addresses an issue that is unnecessary to

---

[6] According to Professor Corbin:

> Internal references in one document to another are often helpful in the processes of interpretation and adjudication; but the absence of such a reference does not make a document unusable in these processes or inadmissible in evidence. Its connection and relevancy can be established otherwise.

Arthur L. Corbin, 3 *Corbin on Contracts* § 549, at 192 (1960).

[7] *See* majority op. at ¶ 20 n.2.

[8] *See* FCS Reply Brief at 3 ("[I]f Appellant is in fact a different corporation from that with which Mr. Wysocki contracted in 1983, then Farm Credit must concede that the contract without an assignability clause, without additional consideration and without direct privity would not be binding on Mr. Wysocki.").

the resolution of the case before us. This sort of rogue commentary causes confusion for future cases in which the explicit legal question addressed in the rogue footnote will be raised, briefed, and contested by the parties and must be addressed directly by this court.[9]

¶ 32. For the reasons set forth, I write separately.

In the absence of an assignment clause, enforcing such a covenant not to compete would violate our canon of construction that covenants not to compete "will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires." *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505 (1984).

[9] For the effect of rogue commentary in a footnote, see, for example, *State v. Hansen*, 2001 WI 53, 243 Wis. 2d 328, 627 N.W.2d 195.