Robert KERL, General Guardian of Robin Kerl, The Estate of David Jones, Benjamin Jones and Donna Roberts, Plaintiffs-Appellants-Cross-Respondents,†

ATTORNEY GENERAL, Wisconsin Department of Health and Family Services, and Wal-Mart Personal Choice, Involuntary-Plaintiffs,

v.

DENNIS RASMUSSEN, INC. and Continental Western Insurance, Defendants-Petitioners,

UNIDENTIFIED DEFENDANT ABC (Arby's Inc.'s Insurer), Defendant,

ARBY'S INC. d/b/a Triarc Restaurant Group, Defendant-Respondent-Cross-Appellant.

Court of Appeals

No. 02–1273. *Submitted on briefs January 10, 2003.— Decided October 9, 2003.*

2003 WI App 226

(Also reported in 672 N.W.2d 71.)

† Petition to review granted 12-16-03.

On behalf of the plaintiffs-appellant-cross respondents, the cause was submitted on the briefs of *Daniel W. Hildebrand* of *DeWitt Ross & Stevens, S.C.*, Madison, and *Douglas B. Keberle* of *Keberle & Patrykus, LLP*, West Bend, and *Donald J. Murphy* of *Murphy Vaughan & Pressentin LLC*, Monona.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Emile H. Banks, Jr.* and *Vicki L. Arrowood* of *Emile Banks & Associates*, Milwaukee.

Before Deininger, P.J., Dykman, and Lundsten, JJ.

¶ 1. DYKMAN, J. Plaintiffs Robin Kerl, the estate of David Jones and David Jones's parents (plaintiffs), appeal from an order dismissing on summary judgment their vicarious liability claim against Arby's Inc, d/b/a Triarc Restaurant Group (Arby's) and from the order denying their motion for reconsideration. Plaintiffs argue that issues of material fact preclude summary judgment. Arby's cross-appeals from the trial court's order denying its motion for summary judgment based upon public policy grounds. Because we conclude that there are no genuine issues of material fact and that Arby's is entitled to summary judgment on the vicarious liability claim as a matter of law, we do not reach Arby's cross-appeal but affirm the trial court's orders in all respects.

## BACKGROUND

¶ 2. This action arises from a tragedy that occurred on June 11, 1999, when Harvey Pierce left his shift at Arby's and walked approximately one-half mile to a Wal-Mart store parking lot, where he shot his former girlfriend, Robin Kerl, and her fiancé, David Jones, both Wal-Mart employees. Pierce then shot himself. Pierce and Jones died. Kerl survived, but sustained serious injuries and is permanently disabled.

¶ 3. Arby's, Inc., is a national franchisor of fast-food restaurants. Dennis Rasmussen, Inc. (DRI), one of Arby's franchisees, owned the Arby's restaurant where Pierce worked. Under the terms of the October 11, 1985 licensing agreement executed by Arby's and DRI, DRI must follow Arby's specifications for food service, cleanliness, signage, suppliers, building construction and remodeling, among other things. In addition, the li-

cense agreement required DRI to comply at all times with all applicable laws, ordinances and regulations, and the manager of the restaurant must have completed an Arby's Restaurant Management Training Seminar.

¶ 4. DRI hired Cathy Propp as general manager for its restaurant in 1994. Although Propp managed another Arby's at that time, she had not completed Arby's management training program. In early 1999 she decided to hire Pierce, a Dane County Jail inmate with Huber law work release privileges. At the time she hired him, Propp believed that Pierce had been convicted of some form of battery. In fact, his conviction was for second-degree sexual assault. During the five months that Pierce worked at the restaurant, he was frequently verbally abusive to other employees, and on numerous occasions acted in an offensive and hostile manner. Despite several complaints from co-workers, Propp never disciplined Pierce. Nor did she take any action when another employee informed her that he had sold Pierce a weapon.

¶ 5. On the day of the shootings, Pierce was scheduled to work from 3:00 p.m. to 10:00 p.m. At 3:51 p.m. he punched out without permission. The shift manager called Propp to tell her that Pierce had left work. Pierce then walked from Arby's to the Wal-Mart parking lot where he shot Kerl, Jones and himself.

¶ 6. The plaintiffs commenced this action against Arby's and its franchisee, DRI. The complaint alleged several causes of action against DRI: (1) negligent supervision; (2) negligent hiring; (3) negligent retention; (4) nuisance; and (5) breach of third-party beneficiary contract. The complaint requested compensatory and punitive damages. Plaintiffs alleged that Arby's was vicariously liable for DRI's negligent supervision

and negligent hiring under theories of actual or constructive agency, respondeat superior and/or active negligence. Plaintiffs claim that Arby's negligently failed to train and supervise management at the Arby's franchise where Pierce was employed.

¶ 7. Arby's moved for summary judgment seeking dismissal of all claims against them. The trial court dismissed with prejudice all claims against Arby's. After plaintiffs filed their notice of appeal, the trial court, at Arby's request, denied Arby's motion for summary judgment on public policy grounds. Arby's cross-appeals from that order.

## DISCUSSION

¶ 8. We review summary judgment decisions de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 31, 236 Wis. 2d 435, 613 N.W.2d 142. We will affirm summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2001–02).[1]

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

*Vicarious Liability*

¶ 9. Plaintiffs claim that DRI was negligent with respect to restaurant management, personnel policies and practices, and compliance with Huber law rules and regulations. According to plaintiffs, there are disputes of material fact which should preclude summary judgment on the issue of whether the control Arby's exerted over its franchisee is sufficient to render Arby's vicariously liable for DRI's negligence in these areas.

¶ 10. We have not previously addressed the issue of vicarious liability in the context of a franchise relationship. With respect to vicarious liability in general, the supreme court has explained:

> Vicarious liability is "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties." Black's Law Dictionary 927 (7th ed. 1999). There is a tension, then, between the basic principle of individual responsibility under the law on the one hand and the imposition of vicarious liability on an innocent party for a tortfeasor's acts on the other hand. *Because vicarious liability is a severe exception to the basic principle that one is only responsible for his or her own acts, we proceed with caution when asked to impose vicarious liability on an innocent party, doing so only in accordance with well-settled law.*

*Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 11, 243 Wis. 2d 648, 627 N.W.2d 484 (emphasis added). Mindful of this instruction, we consider the parties' arguments regarding the appropriate standard for imposing vicarious liability on a franchisor. This issue presents a question of law, which we decide without deference to the trial court.

¶ 11. Plaintiffs assert that *Raasch v. Dulany*, 273 F. Supp. 1015 (E.D. Wis. 1967), is the appropriate standard for Wisconsin law, and under *Raasch*, a franchisor who has the "right to control" daily operations of a franchisee may be liable for injuries caused by the franchisee's negligence. Therefore, plaintiffs conclude that vicarious liability is not limited to those activities over which the franchisor has actual control.

¶ 12. The defendants in *Raasch* were Avis-Rent-A-Car System, Inc., and one of its licensees. An employee of the licensee negligently caused an automobile accident, in which he was killed and the plaintiffs were injured. Avis moved for summary judgment, arguing that there was no basis for imposing liability on it for the negligent actions of the licensee's employee. The court analyzed the issue under agency law principles and stated that the key inquiry was whether Avis had "control or a right of control" over the way its licensee does business. *Id.* at 1018. After reviewing the licensing contract, the court concluded that Avis did have substantial control over its licensee. The court noted that the contract required the licensee to submit monthly reports to Avis, to use only Avis rental agreements, to comply with Avis's insurance standards and to follow Avis's instructions regarding rental rates and advertising. Further, the licensee had to operate in conformance with the Avis operator's manual and all bulletins, directives and instructions therein. Avis had the right to terminate the contract if the licensee failed to meet Avis's "reasonable standards." *Id.* Noting the discrepancy between the contract provisions and Avis's affidavit averring that it had little control over its licensees, the court concluded that there was a genuine dispute

regarding the nature of Avis's relationship with its licensee and therefore summary judgment was inappropriate.[2] *Id.*

¶ 13. Based on *Raasch*'s emphasis on the presence of a standards manual and the right to terminate the contract, plaintiffs conclude that, because Arby's required DRI to comply with its standards and could terminate the franchise agreement for noncompliance, the question of Arby's vicarious liability is for the jury to decide and should not be resolved on summary judgment. Arby's, however, contends that *Raasch* presents an outdated view of franchise relationships and that the proper standard for franchisor vicarious liability limits a franchisor's exposure to those activities over which it has actual control and which give rise to the negligence claim.

¶ 14. Arby's submits that the prevailing view of franchise relationships is illustrated by *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 815 (Iowa 1994), in which the Iowa Supreme Court determined that McDonald's was not liable when a franchisee's employee was assaulted by third parties. McDonald's argued that the franchisee, as Hoffnagle's employer, had the duty to provide a safe and secure work environment. *Id.* at 811. The court agreed, reasoning that the liability of the franchisor was a product of "the extent of the franchisor's control of the daily operation of the business." *Id.* at 814. Because it was a component of the duty issue, the question of the franchisor's retained control over the franchisee was a matter of law. *Id.* As in *Raasch*, the franchisee had to follow McDonald's busi-

---

[2] The court also concluded that the facts might support Avis's liability under a joint enterprise theory. *Raasch v. Dulany*, 27 F. Supp. 1015, 1019 (E.D. Wis. 1967).

ness manuals, guidelines and product and service specifications. However, the court concluded that McDonald's did not retain sufficient control to owe a duty of security to the franchisee's employee. *Id.* at 812–14. Although McDonald's required its franchisee to follow the "McDonald's system," it was the franchisee that had the power to "hire, fire, supervise and discipline the franchisee's employees." *Id.* at 814. Consequently, McDonald's authority over "the uniformity and standardization of products and services offered by the [franchisor's] restaurant" was not sufficient control of day-to-day operations to establish vicarious liability. *Id.* (quoting *Little v. Howard Johnson Co.*, 455 N.W.2d 390 (Mich. Ct. App. 1990)).

¶ 15. The holding in *Hoffnagle* is consistent with the majority of other jurisdictions that have considered franchisor liability for the negligence of a franchisee. "Courts . . . require franchisors to exercise more than the right to control uniformity of appearance, products and administration in order to find a duty" owed to a party injured by a franchisee's negligence. *Helmchen v. White Hen Pantry, Inc.*, 685 N.E.2d 180, 182 (Ind. Ct. App. 1997). Indeed, such standards enable a franchisor to protect its franchise and trade name. *Schlotzsky's, Inc. v. Hyde*, 538 S.E.2d 561, 563 (Ga. Ct. App. 2000). Thus courts have declined to find a franchisor vicariously liable where the franchise agreement retained the right to inspect and enforce standards. *See, e.g., Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 88 (E.D.N.Y. 2000), *aff'd,* No. 00–7923, 2001 WL 170639 (2nd Cir. Feb. 20, 2001). Nor is a general right to terminate the franchise agreement for noncompliance sufficient to create liability. *See Little*, 455 N.W.2d at 394 (no vicarious liability where franchisor had right of inspection but actual control was limited to holding franchisee in

breach of agreement for failure to meet standards); *Pizza K, Inc. v. Santagata*, 547 S.E.2d 405, 407 (Ga. Ct. App. 2001) (franchise agreement retaining right to inspect franchisee's establishment and to terminate for noncompliance with franchise standards not sufficient control of day-to-day activities to create agency relationship); *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) (imposition of uniform practices, right to inspect franchisee's premises and right to terminate the agreement does not render franchisor liable for franchisee's negligence).

¶ 16. The prevailing standard focuses on whether the franchisor controls the "specific 'instrumentality' which allegedly caused the harm." *Helmchen*, 685 N.E.2d at 182. This is illustrated by a number of cases where a franchisee's employee has been injured by third parties and has claimed the franchisor was responsible for inadequate security; courts have declined to impose liability when there was no showing of the franchisor's control over security measures. In *Helmchen*, the franchisor was not liable for the employee's injuries because the security procedures were not mandatory and mere suggestions or recommendations regarding security were insufficient to create a duty. In *Chelkova v. The Southland Corp.*, 771 N.E.2d 1100 (Ill. App. Ct. 2002), the court concluded that the franchisor was not liable for the franchisee's negligent security measures because, although the franchisor distributed a "robbery-prevention kit" and paid for a security system, implementing the security measures was not mandatory but was left to the franchisee's discretion. Similarly, in *Folsom v. Burger King*, 958 P.2d 301, 309 (Wash. 1998), the Washington Supreme Court adopted *Hoffnagle*'s approach, and held that there was no duty of care owed

to a franchisee's employee when the injured employee could not show that Burger King controlled security at the franchise restaurant.

¶ 17. Plaintiffs maintain that Wisconsin should not follow the more restrictive test for franchisor vicarious liability used in other jurisdictions. Plaintiffs urge us to adopt the view of Wisconsin law espoused in *Raasch*. Under *Raasch*, the right to control the franchisee is sufficient to trigger liability on the part of the franchisor. But as a decision by a federal district court, *Raasch*'s view of Wisconsin law is not binding on this court. *Leverence v. U.S. Fid. & Guar.*, 158 Wis. 2d 64, 91, 462 N.W.2d 218 (Ct. App. 1990). And, the four cases the plaintiffs cite in addition to *Raasch*[3] are contrary to the majority of more recent cases addressing franchise relationships.

¶ 18. The most current case cited by plaintiffs, *Miller v. McDonald's Corp.*, 945 P.2d 1107 (Or. Ct. App. 1997), does not persuade us that the requirement that a franchisee follow a detailed standards manual warrants finding a duty on the part of the franchisor because of its general right to control the daily operations of the franchisee. In *Miller*, the plaintiff sued after biting into a sapphire stone in her Big Mac. She had gone to the restaurant on the assumption that it was

---

[3] *Drexel v. Union Prescription Ctr., Inc.*, 582 F.2d 781 (3rd Cir. 1978), *Singleton v. Int'l Dairy Queen, Inc.*, 332 A.2d 160 (Del. Super. Ct. 1975), *Billopszv. Magness Constr. Co.*, 391 A.2d 196 (Del. 1978), and *Miller v. McDonald's Corp.*, 945 P.2d 1107 (Or. Ct. App. 1997). At least one other case, *Perry v. Burger King Corp.*, 924 F. Supp. 548, 554 n.4 (S.D.N.Y. 1996), has distinguished *Singleton* on the ground that the injury caused when a young girl fell through a glass door to a restaurant was directly connected to the physical structure of the franchise building, an element controlled by the franchisor.

owned, controlled and managed by McDonalds. The court held that there was sufficient evidence to raise a jury issue on both actual agency and apparent agency theories. But *Miller* is distinguishable on its facts; the injury bore a direct relationship to how McDonald's instructed its franchisee to prepare food, and McDonald's regularly inspected the restaurant to ensure compliance with its product standards. Vicarious liability did not result from a general right of control but because "there is evidence that [McDonald's] had the right to control [its franchisee] in the precise part of its business that allegedly resulted in plaintiff's injuries." *Id.* at 1111.

¶ 19. In sum, the majority of cases decided since *Raasch* apply a narrower approach to whether a franchisor controls the daily operations of its franchisee to an extent sufficient to impose vicarious liability. Under the prevailing view "the most significant factor to consider is the degree of control that the franchisor maintains over the daily operations of the franchisee or more specifically, the "manner of performing the very work in the course of which the accident occurred." *Hart v. Marriott Int'l, Inc.*, 758 N.Y.S.2d 435, 438 (2003) (quoting *Andreula v. Steinway Baraga Food Corp.*, 668 N.Y.S.2d 891 (1997)). We agree with the analysis in these cases and conclude that, contrary to *Raasch*, in an action seeking to impose vicarious liability on a franchisor for the negligent actions of a franchisee, a franchisor's general right to control several aspects of a franchisee's operations is not enough. Rather, the decisive factor is whether the franchisor controls the daily operations of the franchisee such that it "exercises a considerable degree of control over the instrumentality at issue." *Wu*, 105 F. Supp. 2d at 87.

839

*Arby's control of DRI*

¶ 20. We now consider whether the facts of this case warrant imposing vicarious liability on Arby's for the alleged negligence of its franchisee, DRI. In this case, because plaintiffs' negligence claim is premised on Propp's failure to properly supervise Pierce, the issue of Arby's vicarious liability turns on whether it had the right to control DRI's personnel practices.

¶ 21. To ascertain the extent of control that Arby's exercised over DRI's day-to-day operations, we look first to the provisions of the license agreement. A license agreement is a contract, and as with all contracts, our task is to determine and give effect to the parties' intent. *Farm Credit Servs. v. Wysocki*, 2001 WI 51, ¶ 12, 243 Wis. 2d 305, 627 N.W.2d 444. If the language of the contract is unambiguous, we apply its plain meaning. *Id.* Only if we conclude that a contract provision is ambiguous do we resort to extrinsic evidence to determine its meaning. *Id.*

¶ 22. According to Section 11.1 of the agreement, DRI is an "independent businessman" and not Arby's employee, agent, joint venturer, partner or representative, and "[DRI] shall have the sole obligation and responsibility for the operation of the Licensed Business and the success thereof." In Section 4:1:1, DRI, as Arby's licensee, agrees to operate its restaurant "strictly in conformance with the Manual" provided by Arby's. DRI must also "[a]t all times comply with all federal, state, county, township and city laws and ordinances, including without limitation, workman's compensation laws, and all rules and regulations of any duly constituted authority, affecting or respecting the Licensed

Business or the Licensed Premises." With respect to personnel and management, the agreement states:

> During the term of this License, LICENSEE shall hire, train, maintain and properly supervise sufficient, qualified and courteous personnel for the efficient operation of the Licensed Business.
>
> ... [A]t least one full-time manager of the Licensed Business at any given time must have satisfactorily completed [Arby's Restaurant Management Training Seminar] program prior to exercising management authority in the Licensed Business, unless such manager shall have satisfactorily completed a comparable training program previously approved by ARBY'S.

¶ 23. As is usual in franchise relationships, DRI must comply with Arby's uniformity and product quality standards, using only products and supplies that meet Arby's specifications. In order to monitor DRI's performance, Arby's reserves a right of inspection:

> ARBY'S or its authorized representatives, at all reasonable times, shall have the right to inspect the Licensed Business, the equipment and operations therein, and to test all Licensed Products offered for sale and supplies used by LICENSEE, for the purpose of determining the quality and standards of such products and supplies, and shall have access to the Licensed Premises for this purpose.

¶ 24. Causes for termination of the agreement are set forth in Article 13:3:

> At any time during the term of this License, the License shall terminate:
>
> . . . .
>
> Upon LICENSEE'S failure to commence to cure within ten (10) days after notice by ARBY'S and to complete

841

such cure to ARBY'S satisfaction within thirty (30) days after such notice: (a) if LICENSEE fails at any time to fully comply with any clause of this License or fails to operate the Licensed Business strictly in accordance with the then-current Manual; (b) if LICENSEE fails to submit any information when requested to do so or submits false or misleading information (this applies without limitation to the license application and monthly sales reports); (c) if LICENSEE duplicates all or portions of the ARBY'S system or know-how in any food service outlet not licensed by ARBY'S; (d) if LICENSEE acts in any way that damages or reflects . unfavorably upon LICENSEE'S business, the business of other ARBY'S licenses, or the ARBY'S system generally; (e) if LICENSEE fails to pay promptly any undisputed bills from suppliers; (f) if LICENSEE assigns or transfers or attempts to assign or transfer any interest in the Licensed Business without prior approval from ARBY'S . . . .

██

¶ 25. We conclude that the terms of the license agreement are clear and unambiguous.[4] While the language describing DRI as "an independent businessman" does not shield Arby's from vicarious liability, *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 423 N.W.2d 848 (1988) (independent contractor clause in contract not dispositive of parties' relationship), we do not read the agreement as giving Arby's authority to hire, fire, supervise or direct the supervision of DRI's employees.

¶ 26. The agreement expressly assigns responsibility for employees to DRI, who "shall hire, train,

---

[4] Because we conclude that the licensing agreement is unambiguous, we do not address plaintiffs' arguments concerning evidence outside the four corners of the document. *See Sambs v. City of Brookfield*, 66 Wis. 2d 296, 317, 224 N.W.2d 582 (1975).

maintain and properly supervise sufficient, qualified and courteous personnel." Plaintiffs contend that this provision gives Arby's "the right to control personnel issues when those issues caused a problem with the operation of the restaurant or the quality of the product." But under Article 13, Arby's remedy for DRI's failure to comply with the agreement and/or OSM standards is limited to giving DRI thirty days to cure the problem and then terminating the franchise agreement if DRI does not rectify the situation within the deadline. Nothing in the agreement gives Arby's the right to supervise directly how DRI handles personnel issues.

¶ 27. Nor does the OSM indicate that Arby's retained the right to intervene in employee management. The OSM contains "helpful hints" and "guidelines" and "words of advice" for addressing problems and disciplining employees. "In order for a duty to arise, the control must consist of more than the mere making of suggestions or recommendations." *Helmchen*, 685 N.E.2d at 183. While some sections of the OSM, such as safety management, do not use conditional language, the fact remains that DRI, and not Arby's, had the discretion to set the terms and conditions of employment. Therefore, the operational standards in the OSM are not a sufficient basis for imposing vicarious liability on Arby's for DRI's negligence.

¶ 28. Further, we are not persuaded that Arby's right to inspect DRI's operations demonstrates either a right of control or actual control over DRI's supervision of its employees. In franchise relationships, a general right of inspection is insufficient to create vicarious liability. *See Hayman v. Ramada Inn, Inc.*, 357 S.E.2d

843

394, 397 (N.C. Ct. App. 1987); *Little*, 455 N.W.2d at 392. Under the plain language of the licensing agreement, Arby's will inspect the premises "for the purpose of determining the quality and standards of . . . products and supplies." The inspection reports used by Arby's demonstrate that Arby's key areas of concern during inspections were product quality and customer service. The reports did not require Arby's to inquire into whether DRI's employees had criminal tendencies. The reference to employee and management training under the "Brand Management" section of Arby's inspection report cannot reasonably be read as conferring authority for Arby's to hire, fire or supervise DRI's employees.

¶ 29. Finally, with respect to whether Arby's exerted actual control over DRI in employment matters, we conclude that plaintiffs have not shown the existence of a genuine issue of material fact to preclude summary judgment on vicarious liability. Rasmussen testified that he did not personally work in the restaurant but hired managers to operate it. He also stated that Arby's required franchise managers to complete Arby's training. Propp testified that she managed the restaurant for DRI and created management procedures for hiring and supervising employees. A jury could not reasonably infer from these facts that Arby's controlled personnel management at DRI's franchise restaurant.

## CONCLUSION

¶ 30. We conclude that the standard for imposing vicarious liability on a franchisor for the negligent acts of a franchisee requires that the franchisor have a right of control or actual control over the alleged negligent activity. Plaintiffs have failed to rebut Arby's prima facie case for summary judgment by showing a dispute

of material fact regarding whether Arby's had the right to control or actually controlled personnel matters. Therefore Arby's is entitled to summary judgment on plaintiffs' negligence claim based on vicarious liability claims. The vicarious liability issue is dispositive of plaintiffs' claims against Arby's, and therefore we do not reach Arby's cross-appeal.

*By the Court.*—Orders affirmed.

¶ 31 LUNDSTEN, J. (*concurring*). I agree with much of the analysis in the majority opinion, but write separately to address what I see as a problematic area of law.

¶ 32. In this case, Arby's did not even arguably have control over the DRI acts or omissions which plaintiffs contend were negligent. Arby's did not specify whether its franchisee, DRI, could hire work-release prisoners or specify how a threatening or possibly dangerous employee should be handled. As the majority states, "[n]othing in the agreement gives Arby's the right to directly supervise how DRI handles personnel issues." Majority at ¶ 26. And, plaintiffs proffered no evidence that Arby's in fact had or exercised such authority. Accordingly, I think it is a simple matter to conclude that Arby's had no liability in this case.

¶ 33. What I find troubling is the majority's unnecessary adoption of a test that purports to provide guidance as to when a franchisor may be held liable for the acts of a franchisee. The majority states: "[T]he decisive factor is whether the franchisor controls the daily operations of the franchisee such that it 'exercises a considerable degree of control over the instrumentality at issue.'" Majority at ¶ 19 (quoting *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 87 (E.D.N.Y. 2000)). Later, the majority states: "We con-

clude that the standard for imposing vicarious liability on a franchisor for the negligent acts of a franchisee requires that the franchisor have a right of control or actual control over the alleged negligent activity." Majority at ¶ 30. But what does this mean?

¶ 34. If a franchisor exerts actual control over alleged negligent activity, it hardly seems necessary to apply a vicarious theory of liability. That leaves "a right of control . . . over the alleged negligent activity." Majority at ¶ 30. How does this apply in practice? For example, is a franchisor vicariously liable for a death resulting from food poisoning caused by a franchisee's failure to follow detailed cleanliness criteria imposed by the franchisor where the franchisor has the right to inspect to determine compliance and, if the criteria are not met, terminate the contract? Perhaps not, because the majority cites with approval cases that have declined to impose liability on a franchisor based on the franchisor's right to inspect, enforce standards, and terminate for noncompliance. Majority at ¶ 15. So what does that leave?

¶ 35. Apart from "apparent agency" cases (a theory that has no application here), when *would* a franchisor be vicariously liable for the negligent acts of a franchisee? This is not a question we need answer because this case can be decided on narrower grounds. What I find perplexing is that the majority does not rest its decision on narrower grounds and leave for another day an attempt at articulating a workable standard by which franchisors may be held vicariously liable for the acts of franchisees.

¶ 36. Accordingly, I do not join the majority decision, but I concur in the result.